# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE BURLINGTON INSURANCE COMPANY<br><br>     Plaintiff,<br><br>  v.<br><br>SHELTER STRUCTURES, INC.<br><br>     Defendant. | CIVIL ACTION NO. 19-4857 |

## MEMORANDUM OPINION

**Rufe, J.**                            **September 4, 2020**

Plaintiff The Burlington Insurance Company filed this action against Defendant Shelter Structures, Inc. seeking a declaratory judgment that it does not have a duty to defend and indemnify Shelter in a separate state court suit. Burlington now seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1]

### I. BACKGROUND

In March 2017, Sceye Sarl,[2] the plaintiff in the underlying action, contracted with Shelter to design and construct a steel-frame, fabric covered hangar to store an airship.[3] The contract required that Shelter "provide plans for the design and manufacture of the Hangar and structural load calculations and engineer reports for the design; manufacture the Hangar pursuant to the plans Shelter Structures provided; transport all of the Hangar components to the Project Site; and erect the Hangar at the Project Site pursuant to the specifications and designs prepared by Shelter

---

[1] In the Answer, Shelter asserted counterclaims for breach of contract, bad faith pursuant to 42 Pa.C.S.A. § 8371, and fraudulent and negligent misrepresentation. *See* Answer [Doc. No. 8] ¶¶ 158–89. The parties did not brief these counterclaims and judgement will not be entered as to them.

[2] Sceye is corporation with headquarters in Lusanne, Switzerland. Underlying Complaint [Doc. No. 1-2] ¶ 1.

[3] *Id.* ¶ 6.

Structures."[4] The contract also stipulated that Shelter comply with all the applicable codes and standards, including designing the hangar to withstand wind speeds of up to 115 miles per hour.[5]

On March 13, 2019, the hangar allegedly "failed in winds far below the design requirements of the applicable building code."[6] It collapsed and destroyed the airship stored within.[7] The underlying complaint alleged that the hangar had both design and construction defects. It alleged that Shelter's designs did not conform to the applicable codes and standards and the erection drawings, and alleged that the actual construction of the hangar did not conform to the construction drawings.[8] Sceye sued Shelter for breach of contract and negligence in the Philadelphia Court of Common Pleas, claiming damages exceeding $10,000,000.[9]

At the time of hangar collapse, Shelter had a commercial general liability insurance policy with Burlington.[10] When Sceye commenced the underlying suit, Shelter sought to have Burlington defend and indemnify it against Sceye's claims.[11] Burlington denied coverage and filed this action seeking a declaration that it had no duty to defend or indemnify Shelter.[12] Shelter counterclaimed for breach of contract, bad faith, and fraudulent and negligent misrepresentation.[13] Burlington filed this Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).[14]

---

[4] *Id.* ¶ 7.

[5] *Id.* ¶¶ 8, 13.

[6] *Id.* ¶ 11.

[7] *Id.* ¶ 12.

[8] *Id.* ¶¶ 13–20.

[9] *Id.* ¶¶ 25–38.

[10] Complaint [Doc. No. 1] ¶ 4.

[11] *Id.*

[12] *See id.* ¶¶ 3–6.

[13] Answer [Doc. No. 8] ¶¶ 158–89.

[14] Burlington's Mem. Supp. Mot. [Doc. No. 16-2] at 1.

**II.     LEGAL STANDARD**

A court may only grant a motion for judgment on the pleadings under Rule 12(c) "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law."[15] The movant must clearly establish that "no material issue of fact remains to be resolved."[16] A genuine dispute of material facts exists when there is sufficient evidence for a reasonable factfinder to rule for the nonmoving party.[17]

In deciding a motion for judgment on the pleadings, a court may consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record."[18] Courts must view all the facts alleged in the pleadings, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party.[19]

**III.    DISCUSSION**

### A. Pennsylvania Law Governs This Coverage Dispute

The parties dispute which state's substantive law governs this action.[20] Burlington argues that Pennsylvania law governs, and Shelter argues for the law of New Mexico, where the underlying incident occurred.[21] A federal court sitting in diversity applies the choice-of-law rules

---

[15] *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008).

[16] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18] *Atiyeh v. Nat'l Fire Ins. Co. of Hartford,* 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

[19] *Rosenau*, 539 F.3d at 221.

[20] In its response to Burlington's Motion, Shelter said that it would seek leave to file separate briefing on the choice-of-law issue, which Burlington had not addressed in the memorandum supporting its motion. Shelter's Mem. Opp. [Doc. No. 19] ¶ 9. No leave was requested but both Burlington and Shelter addressed the choice-of-law issue at length in their reply and sur-reply memoranda and separate briefing was not needed.

[21] There appears to be an actual conflict between the laws of Pennsylvania and New Mexico. Under Pennsylvania law, an insurer's duty to defend is governed by the "four corners" rule, which limits analysis of the duty to defend to the allegations contained in the underlying complaint. *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243,

3

of the forum state.[22] As a threshold matter, Pennsylvania's choice-of-law analysis is only undertaken where there is a "true conflict between the relevant laws;" where "*both* jurisdictions' interests would be impaired by the application of the other's laws."[23]

There appears to be a true conflict between the relevant laws: New Mexico "has an interest in whether the potential liability in the [underlying] litigation is covered;" and Pennsylvania has an interest in its law applying to an insurance policy issued in Pennsylvania to a company with a place of business in Pennsylvania.[24]

For conflicts related to insurance contract interpretation, courts should consider "each state's contacts with the contract at issue under the *Restatement (Second) of Conflict of Laws*, 'bearing in mind that we are concerned with the contract of insurance and not the underlying tort.'"[25] The contacts considered include the place of negotiation and contracting, the place of performance, the location of the subject matter of the contract, and the "domicile, residence, nationality, place of incorporation and place of business of the parties."[26] The various contacts are then weighed in light of the underlying policies and interests of each state.[27]

---

249 (3d Cir. 2019). Under New Mexico law, the duty to defend may arise "from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage." *First Mercury Ins. Co. v. Cincinnati Ins. Co.*, 882 F.3d 1289, 1301 (10th Cir. 2018) (emphasis omitted) (quoting *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1116 (1990)).

[22] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[23] *Specialty Surfaces Intern., Inc. v. Continental Cas. Co.*, 609 F.3d 223, 230 (3d Cir. 2010) (emphasis in original) (quotations and citations omitted).

[24] *Id.* at 232.

[25] *Id.* at 233 (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 232–33 (3d Cir. 2007)) (cleaned up).

[26] *Id.* at 233–36 (quoting *Restatement (Second) of Conflict of Laws* § 188(2)).

Section 193 of the Restatement directly addresses choice-of-law for casualty insurance policies, and states that the "local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy" should be applied. *Restatement (Second) of Conflict of Laws* § 193. But where, as here, the policy covers work done nationally and the insured party performs work nationally, there is no principal location of the insured risk. *See Specialty Surfaces*, 609 F.3d at 233; *see also* Policy [Doc. No. 1-1] at 31 ("coverage territory" includes the United States of America, Puerto Rico, Canada, and international waters or airspace).

[27] *Specialty Surfaces*, 609 F.3d at 230.

The parties dispute the place of contracting and negotiation, but neither party suggests that either occurred in New Mexico.[28] The location of the subject matter of the contract also favors neither state because "the policy provided nationwide coverage."[29] The place of performance is Pennsylvania because that is where Burlington, if required by the policy, would perform its duty to defend, but "the place of performance of any duty . . . to defend the underlying lawsuit is entitled to relatively little weight" in the analysis.[30] Finally, neither party has its place of incorporation or principal place of business in New Mexico, but it appears that Shelter may have its principal place of business in Pennsylvania.[31]

Although there are some contacts with Pennsylvania, and no contacts with New Mexico, contact analysis does not provide an overwhelming answer. However, when considering choice-of-law for claims sounding in contract, "the protection of the justified expectations of the parties is of considerable importance."[32] When parties to a contract include and reference the laws of a certain state in an insurance policy, it is an indication of the parties' intent to be governed by the laws of that state.[33] Here, the policy contains several Pennsylvania endorsements, and no

---

[28] *See* Burlington's Reply Mem. [Doc. No. 22] at 3; Shelter's Sur-Reply Mem. [Doc. No. 25] at 4–5.

[29] *Specialty Surfaces*, 609 F.3d at 234. Shelter argues that the location of the subject matter of the contract was New Mexico because both parties were aware at the time the policy went into effect that its coverage was mainly "intended for the project in New Mexico." Shelter's Sur-Reply Mem. [Doc. No. 25] at 4. But the policy expressly defines an expansive "coverage territory" and the policy makes no reference to New Mexico projects. *See* Policy [Doc. No. 1-1] at 31.

[30] *Specialty Surfaces*, 609 F.3d at 235. The place of Shelter's performance—the location where it paid its premiums—is not part of the record, but there is no indication that it was New Mexico.

[31] Shelter disputes that its principal place of business in in Pennsylvania. *See* Answer [Doc. No. 8] ¶ 2 ("Shelter is a Florida corporation [with] an office in Philadelphia, Pennsylvania located at 456 E. Locust Avenue."); *see also* Shelter's Sur-Reply Mem. [Doc. No. 25] at 5. However, the policy has Shelter's Pennsylvania office as Shelter's mailing address and the only location included in the "Supplemental Schedule of Locations" is Shelter's Pennsylvania office. Policy [Doc. No. 1-1] at 3, 6.

[32] *Restatement (Second) of Conflict of Laws* § 188, cmt. b. Both Pennsylvania and New Mexico also have a strong interest in enforcing contracts based on the intent and justified expectations of the parties. *See e.g. Specialty Surfaces*, 609 F.3d at 235; *Schaefer v. Hinkle*, 597 P.2d 314, 316 (N.M. 1979).

[33] *D'Orazio v. Hartford Ins. Co.*, No. 09-403, 2009 WL 1812790, at *2 (E.D. Pa. June 23, 2009) (citing *Assicurazioni Generali v. Clover*, 195 F.3d 161, 165 (3d Cir. 1999)) (finding that parties may explicitly or

reference to New Mexico.[34] These references, and the lack of any contacts with New Mexico, suggest that the parties had an expectation that the contract would be interpreted under the laws of Pennsylvania.

Shelter argues that the policy's service-of-suit provision[35] should be interpreted as a choice-of-law provision, and so New Mexico law should govern.[36] But Shelter's interpretation of the provision does not conform with its unambiguous wording, which makes clear that it only applies to actions *brought against* Burlington.[37] It is inapplicable for the instant action which was brought by Burlington.[38]

But even if the service-of-suit provision were applicable, it would be implausible that the parties intended it function as a choice-of-law provision. Service-of-suit provisions have long been included in insurance contracts, and courts have interpreted them often.[39] It is well established that a service-of-suit provision "shows a consent to jurisdiction of any court of

---

implicitly choose the applicable state law by referencing that law in their contract); *see also Hatchigian v. State Farm Ins. Co.*, No. 07-3217, 2008 WL 5002957, at *8 (E.D. Pa. Nov. 25, 2008).

[34] Policy [Doc. No. 1-1] at 8, 13, 15.

[35] The service-of-suit provision states: "It is agreed that in the event of the Company's failure to pay any amount claimed to be due under this policy, the Company, at the request of the insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America, and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." *Id.* at 8.

[36] *See* Shelter's Sur-Reply Mem. [Doc. No. 25] at 2

[37] *See* Policy [Doc. No. 1-1] at 8 ("[I]n the event of the Company's failure to pay any amount claimed to be due under this policy, the Company, at the request of the insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America"). This reading is further supported by the remainder of the provision which discusses how process may be served on Burlington. *Id.*

[38] *See Ace Capital v. Varadam Found.*, 392 F. Supp. 2d 671, 675 (D. Del. 2005) (*quoting Int'l Ins. Co. v. McDermott Inc.*, 956 F.2d 93, 95–96 (5th Cir.1992)) ("Thus, when the action is first instituted by the insurer, the Service of Suit clause simply has no application."); *See also Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1291 (N.J. 2008) (collecting cases).

[39] *See Chubb Custom Ins. Co.*, 948 A.2d at 1290–91 (N.J. 2008) (discussing the history of the service-of-suit provision in insurance policies).

plaintiff's choice" and "does not address the law that is to be applied."[40] Had the parties intended it to also provide for the choice of law, they could have stated so explicitly.[41] The Court determines that Pennsylvania law governs.

### B. There Was No Occurrence, so Burlington Does Not Have a Duty to Defend or Indemnify Shelter in the Underlying Action

When determining whether an insurance company has a duty to defend, Pennsylvania courts apply the "four corners" rule, where a court may only compare "the four corners of the insurance contract to the four corners of the [underlying] complaint."[42] An insurer must defend its insured unless, after liberally construing the allegations in favor of the insured,[43] it is clear that there is no possibility that the insurer owes the insured a defense.[44] An insurer's duty to defend is broader than its duty to indemnify, so "if a court determines that the former does not exist, neither does the latter."[45]

The insurance contract between Burlington and Shelter provides that Burlington will defend Shelter against suit and pay damages arising from "bodily injury" and "property damage"

---

[40] *Allianz Ins. Co. v. SSR Realty Advisors, Inc.*, No. 02-7253, 2003 WL 21321430, at *6 (E.D. Pa. June 5, 2003). The Third Circuit has noted that "[t]he vast majority of cases interpreting the phrase 'law and practice of such Court' in a service-of-suit clause read it as 'a consent to jurisdiction by the insurer and a prohibition against an insurer interfering with a forum initially chosen by the insured.'" *H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, 675 F. App'x 122, 127 (3d Cir. 2017) (quoting *Chubb Custom Ins. Co.*, 948 A.2d at 1292).

[41] *See Chesapeake Utilities Corp. v. Am. Home Assur. Co.*, 704 F. Supp. 551, 557 (D. Del. 1989) ("The Court has no doubt that the parties could have agreed in advance upon the law which would govern any subsequent contract dispute. However in this case the parties reached no such agreement. The [phrase 'in accordance with the law and practice of such Court'] is part of a service of suit clause. It is not a choice of law provision.").

[42] *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010); *see also Kvaerner Metals Div. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) ("[A]n insurer's duty to defend is triggered, if at all, by the factual averments contained in [the underlying] complaint.").

[43] *Frog, Switch & Mfg. Co. v. Traveler's Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

[44] *Ramara Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673–74; *see also Jerry's Sport Ctr.*, 2 A.3d at 541 ("[I]t is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.").

[45] *Sapa*, 939 F.3d at 250.

7

caused by an "occurrence."[46] The contract defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful condition."[47]

Under Pennsylvania law, claims for faulty workmanship are not covered by occurrence-based provisions like this one because the term "accident" "implies a degree of fortuity that is not present in a claim for faulty workmanship."[48] As the Pennsylvania Supreme Court has explained, allowing an occurrence-based policy to cover faulty workmanship would essentially convert a policy intended to cover accidents into a performance bond guaranteeing the insured's work.[49]

Shelter argues that the windstorm on March 13, 2019, should be considered an occurrence under the policy.[50] But the underlying complaint does not allege a windstorm. It alleges that the hangar "failed in winds far below the design requirements of the applicable building code" and that "the actual wind forces were less than half of what the [h]angar should have been constructed to resist."[51] Based solely on the underlying complaint, the failure of the hangar was the foreseeable result of the allegedly faulty workmanship, which is not an occurrence under Pennsylvania law.[52]

---

[46] Policy [Doc. No. 1-1] at 19.

[47] *Id*. at 33.

[48] *Kvaerner*, 908 A.2d at 898.

[49] *Kvaerner*, 908 A.2d at 899. Shelter argues that under *Indalex Inc. v. National Union Fire Insurance Co.*, 83 A.3d 418 (Pa. Super. Ct. 2013), the failure of the hangar was an "active malfunction" and an occurrence. *See* Shelter's Mem. Opp. [Doc. No. 19] at 8. However, the policy at issue in *Indalex* used a broader definition of the term 'occurrence' than the policy here and included subjective language. *See Indalex Inc.*, 83 A.3d at 424–25 (definition of 'occurrence' included "Property Damage neither expected nor intended from the standpoint of the Insured."); *see also Sapa*, 939 F.3d at 258 n.9 ("We find persuasive *Indalex*'s explanation that the "subjective language" of the Insured's Intent Clause may have a material effect on coverage.").

[50] Shelter's Mem. Opp. [Doc. No. 19] at 7.

[51] Underlying Complaint [Doc. No. 1-2] ¶¶ 11, 19.

[52] *See Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 713 (Pa. Super. Ct. 2007) ("[N]atural and foreseeable acts . . . which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence.'"); *see also Specialty*

8

Shelter also argues that where third-party property is damaged, faulty workmanship may be considered an occurrence.[53] But the Superior Court of Pennsylvania merely held that faulty workmanship does not preclude the finding of an occurrence when third-party property is damaged.[54] An underlying complaint must still allege that the damage was caused by "an unexpected and undesirable event" that "falls within the definition of the term 'occurrence' under the [policy]" for there to be a duty to defend.[55]

Finally, Shelter argues that because it was merely the seller of a structure "engineered, manufactured, and erected by others," and not the actual manufacturer and builder of the hangar, the failures of the subcontractors should be considered an occurrence under the policy.[56] But were the Court to accept this argument, it would swallow the occurrence requirement and render the policy language mere surplusage.[57] Because the underlying complaint does not allege an occurrence, Burlington has no duty to defend or indemnify Shelter in the underlying action.[58]

---

*Surfaces*, 609 F.3d at 239 (finding that "damages that are a reasonably foreseeable result of the faulty workmanship" are not an occurrence under a commercial general liability policy).

Shelter requests that the Court speculate as to wind speeds in which the hangar failed and to find that a windstorm caused the failure. Shelter's Mem. Opp. [Doc. No. 19] at 3–4. Such speculation goes beyond liberally construing the allegations of the underlying complaint in favor of the insured. *See Kvaerner*, 908 A.2d at 896 (finding that the Superior Court of Pennsylvania erred in considering expert reports because they were outside the factual averments of the underlying complaint).

[53] *See* Shelter's Mem. Opp. [Doc. No. 19] at 9–12 (citing *Pennsylvania Manufacturers Indemnity Co. v. Pottstown Industrial Complex LP*, 215 A.3d 1010 (Pa. Super. Ct. 2019)).

[54] *Pottstown Industrial*, 215 A.3d at 1015.

[55] *Id.* at 1018.

[56] Shelter's Mem. Opp. [Doc. No. 19] at 12.

[57] *See Millers Capital Ins. Co. v. Gambone Bros. Development Co.*, 941 A.2d 706, 715 (Pa. Super. Ct. 2007).

Shelter also suggests that the "products-completed operations hazard" clause of the policy, which "applies to third-party property that is damaged by the insured's work or work product," provides an additional contractual basis for coverage. Shelter's Mem. Opp. [Doc. No. 19] at 13; *see also* Policy [Doc. No. 1-1] at 33. But a "products-completed operations hazard" clause does not obviate the contractual requirement of an occurrence. *See Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 363–64 (E.D. Pa. 2017).

[58] The underlying action includes both a claim for breach of contract and a claim for negligence. Because the negligence claim is based on the same allegations as the breach-of-contract claim, it also does not trigger a duty to

**IV. CONCLUSION**

Pursuant to Pennsylvania law, an insurer's duty to defend is based on the "four corners" of the insurance policy and underlying complaint. The underlying complaint does not allege an occurrence as required by the policy, and therefore Burlington did not have a duty to defend or indemnify Shelter. An appropriate Order follows.

---

defend. *See Specialty Surfaces*, 609 F.3d at 231; *see also Hagel v. Falcone*, No. 614 EDA 2014, 2014 WL 8331846, at *7 (Pa. Super. Ct. Dec. 23, 2014).